202 So.2d 354 (1967)
Leo BUTLER et al.
v.
The TRAVELERS INSURANCE COMPANY et al.
No. 7086.
Court of Appeal of Louisiana, First Circuit.
June 30, 1967.
Rehearing Denied September 27, 1967.
Writ Refused November 6, 1967.
Bryant W. Conway, Baker, for appellants.
Horace C. Lane, Calvin E. Hardin, Jr., of Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for appellees.
Before LOTTINGER, REID and SARTAIN, JJ.
LOTTINGER, Judge.
This is an appeal from a summary judgment granted in favor of the defendants, Wyeth Laboratories, division of American Home Products Corporation and Parke, Davis & Company dismissing plaintiffs' suit as to said defendants.
This suit was instituted originally against two physicians and The Travelers Insurance Company and The American Insurance Company, their respective professional liability insurers. The suit arose as a result of the plaintiff, Lilly Mae Wade Butler being admitted to Our Lady of the Lake Hospital in Baton Rouge, Louisiana on May 7, 1962. At that time, she had suffered a cut on her nose, and a more serious laceration on her right knee. She was first seen by a general practitioner who, after examining the laceration on her right knee, called in an orthopedist for consultation. Shortly after her admission to the hospital, Mrs. Butler was administered penicillin and tetanus toxoid, a drug used to prevent tetanus. Surgery was performed *355 on her knee and she was discharged from the hospital on May 9, 1962. She subsequently saw one of the doctors in his office on May 11, 1962 and at that time was told to return the following Friday. On May 17, 1962, Mrs. Butler, after encountering some difficulty in fully opening her mouth, went to Baton Rouge General Hospital where she was seen by a physician who was an associate of one of the physicians who had administered the penicillin and tetanus toxoid and performed the surgery on her knee. On that same day she was taken to Charity Hospital in New Orleans where she was hospitalized for a considerable length of time. The plaintiff's petition alleges that at Charity Hospital in New Orleans, her complaint was diagnosed as positive tetanus.
The instant suit was instituted naming as defendants the two physicians and their professional liability insurers. The original petition was filed on April 29, 1963, and the plaintiffs propounded written interrogatories to all defendants. Thereafter on March 30, 1965, the plaintiffs filed an amended petition wherein they alleged that Wyeth Laboratories and Parke, Davis & Company had manufactured, produced and sold certain drugs which were used to treat the plaintiff, Lilly Mae Wade Butler, at Our Lady of the Lake Hospital in Baton Rouge. They alleged that Wyeth Laboratories manufactured and distributed to the hospital the tetanus toxoid which had been administered to Mrs. Butler and that Parke, Davis & Company was the manufacturer of the penicillin which had been administered to Mrs. Butler. They further alleged that Wyeth Laboratories and Parke, Davis & Company warranted that the particular tetanus toxoid and penicillin administered "was fit for the purpose of properly treating the person against the dangers of tetanus, and in so manufacturing, were delivering and selling through its agents, dealers and employees as aforesaid," warranted that the same would prevent tetanus under the circumstances arising in the plaintiff's injury and further alleged that the doctors relied upon the warranty. The petitioners also alleged that the injuries, pain, suffering, etc. set forth in the original petition "were caused jointly by the negligence of the two defendant doctors and a breach of warranty issued by Wyeth Laboratories and Parke, Davis & Company and alternatively, by the breach of warranty alone, and that the said breach of warranty consisting of the reliance on the warranty by the said doctors and the failure of the said drugs to do what they were supposed to do".
Wyeth Laboratories and Parke, Davis & Company thereafter moved for a summary judgment dismissing them from the suit. By stipulation between counsel for plaintiffs and counsel for Parke, Davis & Company and Wyeth Laboratories, the depositions of the two physicians which had been taken on May 22, 1963, the exhibits attached thereto, the drug company brochures contained in the suit record and the pleadings would be considered in the trial of the motion for summary judgment. After hearing argument on the motions, the Trial Judge granted the summary judgment dismissing the drug companies from this suit. Plaintiffs appealed to this Court devolutively only with reference to the granting of the summary judgment, the matter having not been tried on its merits as to any of the defendants, including those named in the original petition.
Appellants assign no individual specifications of error, but we interpret the brief filed on their behalf as arguing that the record does show that there is a genuine issue of material fact to be determined.
The affidavits executed by the two doctors in conjunction with appellees' motion for summary judgment are to the net effect, inter alia, that the doctors did not rely on any warranty by appellees guaranteeing that either tetanus toxoid or penicillin would prevent tetanus. In their affidavits, the doctors further state that they know of no warranty by which any distributor *356 which would guarantee the prevention of tetanus under the circumstances arising out of their treatment of the plaintiff, nor did they rely on any such alleged warranty when they ordered tetanus toxoid and penicillin administered to the patient.
The appellants alleged in their original petition and urged to some extent in their brief that one of the acts of negligence committed by the two doctors was their failure to administer tetanus antitoxin to the petitioner, rather than tetanus toxoid. In their affidavits attached to the appellees' motion for summary judgment and in their depositions which were taken long before the amended petition was ever filed, both of the doctors stated that tetanus toxoid was a product which was used to stimulate the body to produce tetanus antiserum and that the incidence of undesirable reactions thereto was minimal, whereas the administration of tetanus antitoxin could and in a relatively high percentage of instances had produced undesirable physical reactions, ranging from physical discomfort to death.
Our reading of the brochures published by the appellees to be used by physicians in connection with the administration of penicillin and tetanus toxoid, which by stipulation are to be considered in evaluating the motion for summary judgment, clearly illustrate to us that no warranty, either express or implied as to the absolute effectiveness of either of these drugs on tetanus or any other ailment is contained therein. With particular reference to the brochure concerning tetanus toxoid the brochure simply recommends immunization for adults and children, particularly those sensitive to horses or cattle or their products and those who have previously received antitoxin or other antiserum of animal origin. The preparation of the tetanus toxoid is described and the methods and amounts of dosage and administration are recommended in detail. The entire tone of the brochure is one of an effort to provide the physician employing the drug with detailed information as to the manufacture, administration, and dosage thereof. Certain recommendations are made with reference to the time and method of administration, and certain caveats with reference to its use are likewise contained therein. Recommendations are made with reference to what symptoms indicate use of the drug. Nowhere do we find a warranty of any character that the drug will absolutely prevent tetanus.
We are not here concerned with an allegation to the effect that the drugs manufactured by the defendants were in any manner impure, adulterated, or poisonous. Rather the allegation is the appellees warranted that the drugs would positively prevent the disease allegedly contracted by one of the plaintiffs.
Considering the depositions of the doctors, with the attachments thereto, the drug company brochures, and the pleadings, we believe that there is no genuine issue of fact which remains to be determined. A review of these various items of evidence convinces us that there was no warranty, either express or implied made by either of the appellees to either the doctors or the plaintiff that either of these drugs would absolutely prevent tetanus. The administration of these drugs was only recommended when certain clinical symptoms existed, and the method of administration and amount of dosage was dealt with in great detail. Accordingly, the summary judgment granted by the Trial Judge is hereby affirmed, appellants to pay all costs of this appeal.
Judgment affirmed.